[Civ. No. 18350. Fourth Dist., Div. One. Aug. 20, 1979.]

THE PEOPLE, Plaintiff and Respondent, v.
MOBILE MAGIC SALES, INC., et al., Defendants and Appellants.

4

---

**Counsel**

de Krassel, Tierney & Cohen and Timothy T. Tierney for Defendants and Appellants.

Edwin L. Miller, Jr., District Attorney, Peter C. Lehman, Charles R. Hayes, Robert C. Fellmeth and John R. Heisner, Deputy District Attorneys, for Plaintiff and Respondent.

**OPINION**

**STANIFORTH, J.**—The People sought civil penalties and injunctive relief against defendants Mobile Magic Sales, Inc. (Mobile), Ralph Forgeon dba La Moree Mobilehome Estates (La Moree), and other mobilehome dealers in North San Diego County (North County), based upon charges of unfair competition and restraint of trade in violation of the Cartwright Act (Bus. & Prof. Code, §§ 16720, 16727 and 16754.5). At the order to show cause hearing, the trial court granted a preliminary injunction which prohibited: "a. Conditioning the rental or lease of sites within Mobilhome Parks in San Diego County on the purchase or lease of mobile homes from MOBILE MAGIC SALES, INC., or any consenting dealer and/or their agents, employees, and servants; b. Intentionally misrepresenting the availability of mobile home park space within Mobilhome Parks in San Diego County; c. Displaying, or allowing to be displayed, any mobile home by MOBILE MAGIC SALES, INC., or any consenting dealer and/or their agents, employees, and servants, as a model home within Mobilhome Parks in San Diego County except as permitted by the California Vehicle Code or the Department of Motor Vehicles. Removal of any so situated mobile homes by any such dealers shall be accomplished within 45 days of the issuance of this order."

Defendants appeal, contending the trial court "improperly" granted the preliminary injunction and citing inter alia *Sherman* v. *Mertz Enterprises,* 42 Cal.App.3d 769 [117 Cal.Rptr. 188]. For reasons set forth below, we conclude the order granting the preliminary injunction must be affirmed.

I

The relevant facts, as established by the pleading, declarations made under penalty of perjury, as well as oral testimony adduced at the hearing on the motion for preliminary injunction, are as follows:[1]

---

[1]The substantial evidence rule applies to appeal court review of preliminary injunctions. Also the familiar rule requires, when evaluating the trial court's exercise of

Mobile is one of the largest retail dealers in new mobilehomes within San Diego County and the State of California. Within the North County area, Mobile is the largest of such dealers by volume[2] and competes with approximately 15 other retail dealerships.

Beginning in 1976, certain other retail dealers entered into business "arrangements" with the owners of mobilehome parks (including defendant La Moree) located in the North County area. In this arrangement, retail dealers contracted to lease or rent available homesites from cooperating park owners. By this process, trailer homesites were preempted by the retail dealer—now lessee—and as a direct result, these homesites were not available to the individual consumer unless they purchased or leased a mobilehome from the retail dealer-lessee. The dealer-lessee also displayed their mobilehomes for sale on these homesites and used these models to conduct retail sales activity.

In 1976, North County mobilehome spaces declined from approximately 200 to 50 homesites. This reduction was attributable to two factors: (1) limited development of new homesites, and (2) restriction of remaining homesites through leaseholds by certain retail dealers.

From 1976 to April of 1978 (when the People filed this complaint) available homesites in the North County area continued to decline. By 1978, "an insignificant number" of homesites existed, and only seven or eight homesites were available for individual consumer lease or rental which were not subject to the requirement that the mobilehome be purchased from Mobile. During the period 1976-1978, Mobile had obtained leaseholds on between 50 to 100 of the 600 homesites then available.

By 1978, Mobile had made such lease arrangements with 14 mobilehome parks in North County. Pursuant to this "arrangement" the trailer

---

discretion in granting a preliminary injunction, that the facts be viewed in the light most favorable to the order. (*San Diego Gas & Elec. Co.* v. *San Diego Congress of Racial Equality,* 241 Cal.App.2d 405, 407 [50 Cal.Rptr. 638].)

[2]The North County area has in recent years experienced the immigration of many new residents. This influx has resulted in an increased demand for housing. The current need, coupled with inflationary pressures, has forced many new residents to seek alternatives to conventional housing. Thus an expanding market for mobilehomes has been an outgrowth of these forces. Mobilehome housing, as consumer goods, is comprised of two components: mobilehomes, a moveable commodity, and mobilehome park space, a right of use of real property. Within a particular geographical area, these two components are necessary compliments.

park owner referred prospective mobilehome tenants to Mobile to secure an available space. Mobile in turn advised such prospective tenants that such park space was available only upon the purchase of a new mobilehome from Mobile.

Prospective tenants, due to their individual preference to locate in one particular mobilehome park, as opposed to any other such park, were forced to forego selective shopping for mobilehomes and were compelled either to purchase such a home, not of their own choosing, and pay the price demanded, or live elsewhere.

As of mid to late 1978, Mobile had such arrangements with respect to the majority of available space in La Moree Mobilehome Estates, and La Moree actively participated in referring prospective tenants to Mobile. A majority of the retail dealers in mobilehomes in the North County area sell brand name mobilehomes that meet the specifications for entry into La Moree. By virtue of its extensive involvement in the foregoing "arrangements," Mobile has been able to price its new homes at levels exceeding those of its North County competitors. Retail dealers in North County without such business arrangements are in imminent danger of going out of business.

## II

Defendants contend the preliminary injunction issued was "mandatory" in nature and was improperly issued because it encompassed matters that must await determination on trial. Secondly, defendants argue that the trial court abused its discretion in granting the injunction in that "no California case" holds the species of "tying" agreement[3] here imposed to be illegal.

The resolution of these contentions requires, first, an examination of the factual and legal prerequisites to issuance of a preliminary injunction under Code of Civil Procedure sections 526 and 527. Code of Civil Procedure section 527, so far as here pertinent, provides: "An injunction may be granted at any time before judgment upon a verified complaint, or upon affidavits if the complaint in the one case, or the affidavits in the other, show satisfactorily that sufficient grounds exist therefor."

---

[3] A "tying" arrangement is defined as: ". . . an agreement by a party to sell one product but only on the condition that the buyer also purchases a different (or tied) product, or at least agrees that he will not purchase that product from any other supplier." (*Northern Pac. R. Co.* v. *United States,* 356 U.S. 1, 5-6 [2 L.Ed.2d 545, 550, 78 S.Ct. 514].)

■ In *Continental Baking Co. v. Katz,* 68 Cal.2d 512, 528 [67 Cal.Rptr. 761, 439 P.2d 889], the Supreme Court summarized the basic principles governing issuance of a preliminary injunction: " 'The granting or denial of a preliminary injunction does not amount to an adjudication of the ultimate rights in controversy. It merely determines that the court, balancing the respective equities of the parties, concludes that, pending a trial on the merits, the defendant should or that he should not be restrained from exercising the right claimed by him.' [Citations.] The general purpose of such an injunction is the preservation of the status quo until a final determination of the merits of the action. [Citations.] ■ Thus, the court examines all of the material before it in order to consider 'whether a greater injury will result to the defendant from granting the injunction than to the plaintiff from refusing it; . . .' [Citations.] In making that determination the court will consider the probability of the plaintiff's ultimately prevailing in the case and, it has been said, will deny a preliminary injunction unless there is a reasonable probability that plaintiff will be successful in the assertion of his rights. [Citations.] As was said in *Family Record Plan, Inc. v. Mitchell* . . . . 'In the last analysis the trial court must determine which party is the more likely to be injured by the exercise of its discretion [citation] and it must then be exercised in favor of that party [citation].' " (See also *Weingand* v. *Atlantic Sav. & Loan Assn.,* 1 Cal.3d 806, 820 [83 Cal.Rptr. 650, 464 P.2d 106].)

■ Further the granting or denial of a preliminary injunction, even though the evidence with respect to an absolute right therefor may be conflicting, rests in the sound discretion of the trial court and may not be disturbed on appeal except for an abuse of discretion. (*People* v. *Black's Food Store,* 16 Cal.2d 59, 61 [105 P.2d 361]; *Allied Artist Pictures Corp.* v. *Friedman,* 68 Cal.App.3d 127 [137 Cal.Rptr. 94].)

Discretion is abused in the legal sense "whenever it may be fairly said that in its exercise the court in a given case exceeded the bounds of reason or contravened the uncontradicted evidence." (*Estate of Parker,* 186 Cal. 668, 670 [200 P. 619]; *State Farm etc. Ins. Co.* v. *Superior Court,* 47 Cal.2d 428, 432 [304 P.2d 13].)

■ Finally, appellate review of the issuance of a preliminary injunction requires a determination whether substantial evidence supports the discretion exercised by the trial court. (*Fresno Canal etc. Co.* v. *People's Ditch Co.,* 174 Cal. 441, 447 [163 P. 497]; *Weingand* v. *Atlantic Sav. and Loan Assn., supra,* 1 Cal.3d 806, 820; *City & County of San Francisco* v. *Evankovich,* 69 Cal.App.3d 41, 54 [137 Cal.Rptr. 883].)

## III

We begin our task by examining defendants' contention that the decision in *Sherman* v. *Mertz Enterprises, supra,* 42 Cal.App.3d 769, precluded the granting of the preliminary injunction here. *Mertz* involves an appeal from the granting of a *summary judgment.* On such motion, the function of the trial court is not "issue determination" but rather "issue finding." (*Walsh* v. *Walsh,* 18 Cal.2d 439, 441 [116 P.2d 62].) The appeal court reversed the judgment, holding Sherman was entitled to a trial upon the claim that the tying agreement (similar to that used here) was illegal. Concerning tying agreements, the *Mertz* court stated at pages 779-780: " ' "For our purposes a tying arrangement may be defined as an agreement·by a party to sell one product but only on the condition that the buyer also purchases a different (or tied) product, or at least agrees that he will not purchase that product from any other supplier. Where such conditions are successfully exacted competition on the merits with respect to the tied product is inevitably curbed. Indeed 'tying agreements serve hardly any purpose beyond the suppression of competition.' [Citation.] They deny competitors free access to the market for the tied product, not because the party imposing the tying requirements has a better product or a lower price but because of his power of leverage in another market. At the same time buyers are forced to forego their free choice between competing products. For these reasons 'tying agreements fare harshly under the laws forbidding restraints of trade.' [Citation.]" (Fns. omitted.) [Citation.] Tying arrangements are illegal per se "whenever a party has sufficient economic power with respect to the tying product to appreciably restrain free competition in the market for the tied product" [citations] and when "a total amount of business, substantial enough in terms of dollar-volume so as not to be merely *de minimis,* is foreclosed to competitors by the tie. . . ." [Citation.]' [Citation.]"

The question here presented is whether defendants should be restrained pendente lite—a totally different factual and legal issue. Defendants' reliance upon *Sherman* v. *Mertz Enterprises, supra,* is misplaced.

## IV

In the instant case, an examination of the three provisions of the temporary injunction in light of applicable rules of law evidences an appropriate and a sound exercise of discretion.

■ The California antitrust law—the Cartwright Act (Bus. & Prof. Code, § 16700 et seq.) is patterned after the federal Sherman Act. Both have their roots in the common law; federal cases interpreting the Sherman Act are applicable with respect to the Cartwright Act. (*Milton* v. *Hudson Sales Corp.,* 152 Cal.App.2d 418, 440 [313 P.2d 936]; *Rolley, Inc.* v. *Merle Norman Cosmetics,* 129 Cal.App.2d 844 [278 P.2d 63, 282 P.2d 991].) In 1961 California incorporated section 3 of the federal Clayton Act in Business and Professions Code, section 16727. The Clayton Act goes beyond common law and the Sherman Act to inhibit trade restraints at their inception; federal interpretations thereof are similarly applicable. (*Chicago Title Ins. Co.* v. *Great Western Financial Corp.,* 69 Cal.2d 305, 315 [70 Cal.Rptr. 849, 444 P.2d 481]; *Corwin* v. *Los Angeles Newspaper Service Bureau, Inc.,* 4 Cal.3d 842, 852, 853 [94 Cal.Rptr. 785, 484 P.2d 953].)

The provisions of the Sherman Act, and therefore sections 16720 and 16726 of the Cartwright Act, codify the common law prohibition against combinations in restraint of trade. (*Sherman* v. *Mertz Enterprises, supra,* 42 Cal.App.3d 769, 775; 2 Areeda & Turner, Antitrust Law (1978) § 302, pp. 2-4.)

The objective of these acts is to proscribe unlawful, "unreasonable" restraints upon trade or commerce and thus, the statutes embrace "virtually any economic act in our infinitely interconnected national economy." (1 Areeda & Turner, Antitrust Law (1978) § 232a, p. 229.) Both federal and state decisional law hold trade or commerce in real estate, or property rights in real estate, to be within the protections of the Sherman Act. (*Northern Pacific Railway Company* v. *United States, supra,* 356 U.S. 1, 7-8 [2 L.Ed.2d 545, 550-551]; *Sherman* v. *Mertz Enterprises, supra,* 42 Cal.App.3d 769, 776-778; *Jomicra, Inc.* v. *California Mobile Home Dealers Assn.,* 12 Cal.App.3d 396, 401 [90 Cal.Rptr. 696].)

By contrast section 3 of the Clayton Act and its California counterpart —section 16727 of the Cartwright Act—are restricted to transactions involving "commodities." (Cf. 15 U.S.C. (1973) § 14 with Cal. Bus. & Prof. Code (West 1964) § 16727.) And realty or property rights in realty have been denied the status of commodity under the Clayton Act. (*Plum Tree, Inc.* v. *N. K. Winston Corporation* (S.D.N.Y. 1972) 351 F.Supp. 80, 86-87; *Gaylord Shops, Inc.* v. *Pittsburg Miracle Mile T. & C. Shop. C.* (W.D.Pa. 1963) 219 F.Supp. 400, 403.)

■ Nevertheless, tying arrangements involving rights in real property are not removed from the prohibitions of the antitrust laws, for such tying

arrangements are made unlawful by section 1 of the Sherman Act and Business and Professions Code sections 16720 and 16726 of the Cartwright Act.

In point is *Northern Pacific Railway Company* v. *United States, supra,* 356 U.S. 1, where the railroad had deeded and leased land by instruments containing "preferential routing clauses" which compelled the grantees or lessees of such land to ship products of that land by the Northern Pacific railroad unless rates or services of competing lines were more favorable. The United States Supreme Court defined a "tying arrangement" as an agreement by a party to sell one product but only on the condition that the buyer also purchases a different (or tied) product or at least agrees that he will not purchase that product from any other supplier (*id.* at p. 5 [2 L.Ed.2d at p. 550]) and applied this definition to the sale or lease of land "tied" or conditioned upon use of the railroad's transportation facilities. This "tying arrangement" was held per se unlawful restraint of trade in violation of sections 1 and 4 of the Sherman Act (15 U.S.C. §§ 1, 4). The Supreme Court reasoned: "Where such conditions are successfully exacted competition on the merits with respect to the tied product is inevitably curbed. Indeed 'tying agreements serve hardly any purpose beyond the suppression of competition.' [Citation.] They deny competitors free access to the market for the tied product, not because the party imposing the tying requirements has a better product or a lower price but because of his power or leverage in another market. At the same time buyers are forced to forego their free choice between competing products. For these reasons 'tying agreements fare harshly under the laws forbidding restraints of trade.' [Citation.]" (*Northern Pacific Railway Company* v. *United States, supra,* at p. 6 [2 L.Ed.2d at p. 550].)

Similarly, *Sherman* v. *Mertz Enterprises, supra,* 42 Cal.App.3d 769, and *Jomicra, Inc.* v. *California Mobile Home Dealers Assn., supra,* 12 Cal.App.3d 396, factually involved tying arrangements between the rental of trailer space and a required purchase of the mobilehome from a particular dealer. The fact that land or rights in land was one of the "tied" products in no way prevented the scheme from being violative of the Cartwright Act. We find nothing in the statutes or judicial interpretations that supports defendants' contention that the species of agreement, business practice here involved is lawful or prohibits a preliminary injunction on the factual showing made to the trial court.

While the reasonableness of the tying arrangement involved in this case is a question of fact yet to be determined on trial, nevertheless,

the conditioning of mobilehome park space on the purchase of a mobilehome from a particular retail dealer "raises a serious issue of illegal conduct to restrain trade and competition." (*Jomicra, Inc.* v. *California Mobile Home Dealers Assn., supra,* 12 Cal.App.3d 396, 401.) The undisputed facts here support the trial court's exercise of discretion in granting the temporary injunction.

Nor does the fact that the legality or illegality of the particular business arrangement must await trial determination—prevent the issuance of a preliminary injunction where circumstances dictate. Here the uncontradicted facts show agreements, business practices that fit the judicial definition of an illegal tying agreement. The evidence before the court was ample to show economic hardship on consumers and competitors results from this device. The evidence, viewed in the light most favorable to the order, warrants an inference that an illegal restraint of commerce was ongoing.[4] Moreover, the injunction does not prevent defendants from selling their mobilehomes or leasing or selling their property interests in the homesites and therefore poses only an insignificant inconvenience to their business. We conclude the injunctive provision prohibiting the conditioning of homesite availability on mobilehome lease or purchase was a reasonable exercise of the trial court's discretion.

## V

The second provision of the preliminary injunction prohibits defendants from misrepresenting the availability of mobilehome homesites. This provision merely requires that defendants conform their conduct to the standards of honest and fair dealing under the Unfair Practices Act. (Bus. & Prof. Code, § 17200.) The trial court validly exercised its statutorily granted injunctive powers in this regard. (Bus. & Prof. Code, § 17203.)

## VI

Finally, defendants assert that the injunction provision (c) requiring the retail dealers to remove the mobilehome models where

---

[4]While no findings of fact were made by the trial court until after it had lost jurisdiction, findings were not required before entry of the preliminary injunction. (Code Civ. Proc., § 632; *Taliaferro* v. *Hoogs,* 236 Cal.App.2d 521, 530 [46 Cal.Rptr. 147].) Our search is not for findings but rather for substantial evidence to support the exercise of discretion here made. (*City & County of San Francisco* v. *Evankovich, supra,* 69 Cal.App.3d 41, 54.)

displayed in violation of Vehicle Code section 11709, subdivision (c), is mandatory in character and therefore improperly granted.

This contention confuses the distinction between mandatory and prohibitive relief. ▇▇ The designation given an injunction by the trial court does not determine whether the decree is prohibitive or mandatory. Instead, the appellate court must examine the terms and effect of the injunction in order to discover its character. (*Feinberg* v. *One Doe Co.*, 14 Cal.2d 24, 28 [92 P.2d 640].)

▇▇ The purpose of mandatory relief is to compel the performance of a substantive act or a change in the relative positions of the parties. (*Mark* v. *Superior Court*, 129 Cal.1, 6-7 [61 P. 436]; *Ambrose* v. *Alioto*, 62 Cal.App.2d 680, 685 [145 P.2d 32].) By contrast, the prohibitive order seeks to restrain a party from a course of conduct or to halt a particular condition. (See 38 Cal.Jur.3d, Injunctions, § 8 (1977) pp. 470-472.) The character of prohibitory injunctive relief, however, is not changed to mandatory in nature merely because it incidentally requires performance of an affirmative act. (*United Railroads* v. *Superior Court*, 172 Cal. 80, 88-89 [155 P. 463].)

▇▇ Under the provisions of section 11709, subdivision (c) of the Vehicle Code, it is unlawful to display mobilehome model homes within a mobilehome park after that park has reached 70 percent occupancy. (Veh. Code, § 11709, subd. (c).) Provision (c) of the trial court's preliminary injunction commands defendants *to* remove those model mobilehomes displayed at mobilehome parks in contravention to the Vehicle Code. While the act of removal is an affirmative act, it is incidental to the injunction's prohibitive objective to restrain further violation of a valid statutory provision. Thus, the third provision of the preliminary injunction is prohibitive in character and properly issued to halt continuing violation of the Vehicle Code.

We conclude: No abuse of discretion in issuing the preliminary injunction is shown. The order granting the preliminary injunction is affirmed.

Brown (Gerald), P. J., and Cologne, J., concurred.