[No. B201302. Second Dist., Div. Six. Jan. 20, 2009.]

THE PEOPLE ex rel. EDMUND G. BROWN, JR., as Attorney General, etc., et al., Plaintiffs and Respondents, v. iMERGENT, INC., et al., Defendants and Appellants.

COUNSEL

Greenberg Traurig and Raymond B. Kim for Defendants and Appellants.

Edmund G. Brown, Jr., Attorney General, Albert Norman Shelden, Assistant Attorney General, Ronald A. Reiter, Michele R. Van Gelderen and Benjamin G. Diehl, Deputy Attorneys General; Gregory D. Totten, District Attorney, and Mitchell F. Disney, Deputy District Attorney, for Plaintiffs and Respondents.

OPINION

**PERREN, J.**—Defendants, iMergent, Inc., and its subsidiary, StoresOnline, Inc., are self-described providers of "eCommerce" technology, training, and other Web-based programs that purport to help start, operate, and maintain home-based businesses. Recognizing the danger that such products and services present to unsophisticated purchasers, California enacted the Seller Assisted Marketing Plan (SAMP) Act (Civ. Code, § 1812.200 et seq.).[1] Among other things, this legislation imposes a duty on the seller of SAMP's to make certain disclosures to the Attorney General and the prospective purchasers (§§ 1812.203, 1812.205, 1812.206, 1812.207), and provides a procedure for the purchaser to cancel any contract for the sale of a SAMP (§ 1812.209). The law applies to all sellers who represent that the purchaser "will earn, is likely to earn, or can earn an amount in excess of the initial payment paid by the purchaser for participation in the seller assisted marketing plan." (§ 1812.201, subd. (a)(1).) Defendants contend that this phrase is unconstitutionally vague. As we shall explain, the words to which defendants object cannot, in any rational way, be construed as failing to provide adequate notice of the conduct that triggers the requirements of the SAMP Act. The statute, *sub judice*, gives " ' "the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." ' " (*Williams v. Garcetti* (1993) 5 Cal.4th 561, 567–568 [20 Cal.Rptr.2d 341, 853 P.2d 507].) Defendants' contention is further called into question by the stipulated judgment and permanent injunction, entered in a prior action less than a year before the instant complaint was filed, in which they agreed to refrain from violating the very act whose clarity of language they now question.

Defendants appeal from an order granting a motion for a preliminary injunction filed by the Attorney General and the Ventura County District

---

[1] All further undesignated statutory references are to the Civil Code.

Attorney on behalf of the People of the State of California (plaintiffs). The injunction prohibits defendants from selling their products and services without first complying with the disclosure provisions of the SAMP Act and the false advertising law (FAL) (Bus. & Prof. Code, § 17537.1). Defendants contend the order granting the injunction must be reversed because the SAMP Act is unconstitutionally vague on its face. They alternatively claim the trial court abused its discretion in issuing a mandatory injunction that prohibits them from engaging in lawful conduct. We affirm.

## FACTS AND PROCEDURAL HISTORY

Defendants sell a package of services and products that purport to assist in the establishment of home-based Internet businesses or, as defendants put it, "a fully functional eCommerce website." Defendants market these services and products by conducting sales presentations at hotels and conference centers throughout the United States. Consumers are solicited by mail with offers of free gifts and meals to attend an initial 90-minute presentation. Those who attend are invited to pay $20 to attend what defendants characterize as "a full-day Internet marketing training workshop" valued at $1,889. Plaintiffs contend this "workshop" is actually "a vigorous all-day sales pitch for [defendants'] Internet storefronts, website design and Internet marketing services."

During the second presentation, defendants offer packages containing either three or six licenses for Web sites, at costs ranging from $2,700 to $4,900. Customers are encouraged to purchase the more expensive package, regardless of whether they have any business experience or a product to sell. Both presentations include numerous testimonials from prior customers who claim to have earned large incomes using defendants' products. As of July 24, 2007, defendants' Web site (Storesonlinepro.com) included several such testimonials, all of which included representations that the customer had recouped his initial investment.

Similar representations were made at sales presentations held in Pasadena, Van Nuys, and Oxnard in 2007. For example, one speaker represented that "the average successful merchant on StoresOnline replaces their entire income and on average works two hours a day." Another speaker stated that while "all testimonials are not earnings claims" and "you could make less money than my examples today, . . . by the same token, you can make, what? More; and a lot more."

In December 2003, defendants conducted two sales seminars in the city of Ventura, at which 61 consumers purchased defendants' products. Plaintiffs located and interviewed 27 of these individuals in May 2007. Most had purchased six Web sites at a cost of $4,700 to $4,900, and almost all had spent a considerable amount of time (up to hundreds of hours) attempting to start businesses. Twenty-four of the 27 were unable to even activate any Web sites, and the remaining three generated less than $1,000 in sales.

In 2006, plaintiffs filed a complaint against defendants alleging violations of the SAMP Act, the FAL, and the unfair competition law (UCL) (Bus. & Prof. Code, § 17200 et seq.). In conjunction with the filing of the complaint, the parties stipulated to a final judgment in which defendants agreed to pay over $1.2 million in restitution and costs. Defendants were also permanently enjoined from selling or offering to sell SAMP's (1) prior to timely filing the required disclosures with the Attorney General; (2) without providing data substantiating any claims regarding the SAMP's income or earning potential to prospective purchasers at the first in-person communication; and (3) without providing other disclosures and information to potential purchasers as provided in the SAMP Act. Defendants were also required to provide plaintiffs with advance notice of the time, place and location of any seminars to be held in California, and to comply with any requests for copies of the invitations used to market the seminars and audio recordings of those seminars.

On July 24, 2007, approximately 10 months after the stipulated judgment and permanent injunction were filed in the prior action, plaintiffs filed the instant complaint alleging that defendants had violated the stipulated final judgment in the prior action, the SAMP Act, the UCL, and the FAL. The allegations in the complaint were based on information obtained by investigators who attended sales presentations, as well as a review of defendants' current marketing materials and Web site. On August 7, 2007, the trial court issued a temporary restraining order (TRO) under authority of Business and Professions Code sections 17203 and 17535 that was substantially identical to the permanent injunction filed in the prior action.

On August 21, 2007, defendants filed a petition for a writ of supersedeas in this court challenging the TRO. While that petition was pending, the trial court issued a preliminary injunction containing the same restrictions as the TRO. We subsequently denied the writ petition challenging the TRO. Defendants filed a second writ petition challenging the preliminary injunction, which we denied on October 12, 2007. This appeal followed.

DISCUSSION

I.

*Constitutionality of the SAMP Act*

The SAMP Act defines a SAMP as "any sale or lease or offer to sell or lease any product, equipment, supplies, or services that requires a total initial payment exceeding five hundred dollars ($500), but requires an initial cash payment of less than fifty thousand dollars ($50,000), that will aid a purchaser or will be used by or on behalf of the purchaser in connection with or incidental to beginning, maintaining, or operating a business when the seller assisted marketing plan seller has advertised or in any other manner solicited the purchase or lease of the seller assisted marketing plan and . . . [¶] (1) [r]epresented that the purchaser *will earn, is likely to earn, or can earn* an amount in excess of the initial payment paid by the purchaser for participation in the seller assisted marketing plan." (§ 1812.201, subd. (a), italics added.)[2] Defendants contend that the foregoing italicized phrase is unconstitutionally vague on its face, and that the preliminary injunction enjoining their continued violations of the SAMP Act must therefore be reversed. We reject this contention.

■ "A statute is void for vagueness if persons of common intelligence must guess as to its meaning and differ as to its applications. [Citation.] 'The void-for-vagueness doctrine reflects the principle that "a statute which either forbids or requires the doing of an act in terms so vague that [persons] of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law." [Citation.] The requirement that government articulate its aims with a reasonable degree of clarity ensures that state power will be exercised only on behalf of policies reflecting an authoritative choice among competing social values, reduces the danger of caprice and discrimination in the administration of the laws, enables individuals to conform their conduct to the requirements of law, and permits meaningful judicial review.' [Citation.]" (*Schweitzer v. Westminster Investments, Inc.* (2007) 157 Cal.App.4th 1195, 1206 [69 Cal.Rptr.3d 472].)

■ In reviewing a facial challenge to a statute on vagueness grounds, we "construe the statute in favor of its validity and give it a reasonable and

---

[2] A number of sales transactions, such as the sale of a franchise or an ongoing business, are expressly excluded from the definition of a SAMP. (§ 1812.201, subd. (b).) It is undisputed that none of those exceptions apply here.

practical construction in accordance with the probable intent of the Legislature; a statute will not be declared void for vagueness or uncertainty if any reasonable and practical construction can be given its language." (*Schweitzer v. Westminster Investments, Inc., supra,* 157 Cal.App.4th at p. 1206.) "[A] claim that a law is unconstitutionally vague can succeed *only* where the litigant demonstrates, not that it affects a substantial number of others, but that the law is vague as to her or 'impermissibly vague in *all of its applications.*' [Citations.]" (*People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1116 [60 Cal.Rptr.2d 277, 929 P.2d 596].) To make this determination, we consider the law's purpose and read the challenged terms "in that context as they should be. [Citations.]" (*Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, 1107 [40 Cal.Rptr.2d 402, 892 P.2d 1145].)

The Legislature explained the SAMP Act's purpose and intent as follows: "[T]he widespread sale of seller assisted marketing plans, often connected with the sale of vending machines, racks or work-at-home paraphernalia, has created numerous problems in California for purchasers which are inimical to good business practice. Often purchasers of seller assisted marketing plans are individuals inexperienced in business matters who use their life savings to purchase the seller assisted marketing plan in the hope that they will earn enough money in addition to retirement income or salary to become or remain self-sufficient. Many purchasers are the elderly who are seeking a way to supplement their fixed incomes. The initial payment is usually in the form of a purchase of overpriced equipment or products. California purchasers have suffered substantial losses when they have failed to receive full and complete information regarding the seller assisted marketing plan, the amount of money they can reasonably expect to earn, and the previous experience of the seller assisted marketing plan seller. Seller assisted marketing plan sellers have a significant impact upon the economy and well-being of this state and its local communities. The provisions of this title relating to seller assisted marketing plans are necessary for the public welfare. [¶] (b) It is the intent of this title to provide each prospective seller assisted marketing plan purchaser with the information necessary to make an intelligent decision regarding seller assisted marketing plans being offered; to safeguard the public against deceit and financial hardship; to insure, foster and encourage competition and fair dealing in the sale of seller assisted marketing plans by requiring adequate disclosure; to prohibit representations that tend to mislead; and to prohibit or restrict unfair contract terms. This title shall be construed liberally in order to achieve the foregoing purposes." (§ 1812.200.)

■ Read in the context of the SAMP Act's stated purpose, the meaning of the terms "will earn, is likely to earn, or can earn" is plain. The SAMP Act, construed liberally, is clearly intended to impose registration and

disclosure requirements on sellers of certain products or services who make *any* representations regarding a prospective purchaser's ability to earn an amount in excess of the purchase price. The term "will earn" refers to a guarantee of income, while "is likely to earn" refers to a probability of earning. "Can earn" is commonly understood to mean either the ability to earn or a mere possibility of earning. (Merriam-Webster's Collegiate Dict. (10th ed. 1999) p. 165.)

▮ Defendants' products and services are, by definition, intended to be used by the purchaser to start, maintain, and operate a business. Moreover, defendants' sale presentations and Web site are replete with representations regarding the possibility of earning income from the businesses that far exceeds the initial cost of the products and services purchased from defendants. While defendants refer to their efforts to notify prospective purchasers that the results reflected in the testimonials are not typical and that there are no guarantees of income, these disclosures do not undermine defendants' repeated representations to prospective purchasers that it is *possible* to earn incomes that exceed the cost of defendants' products and services. These representations are plainly covered by the SAMP Act.

▮ Defendants' attempts to identify hypothetical situations in which the SAMP Act might be unconstitutionally applied to others are unavailing. In evaluating whether a statute is void for vagueness, "[w]e are not obliged to '. . . consider every conceivable situation which might arise under the language of the statute . . .' [citation], so long as that language may be given '. . . a reasonable and practical construction in accordance with the probable intent of the Legislature' and encompassing the conduct of the defendants [citation]." (*Bowland v. Municipal Court* (1976) 18 Cal.3d 479, 492 [134 Cal.Rptr. 630, 556 P.2d 1081].)

## II.

### *The Preliminary Injunction*

Defendants contend the trial court abused its discretion in issuing the preliminary injunction because it prohibits them from engaging in lawful conduct. According to defendants, the injunction is mandatory and plaintiffs failed to make the requisite showing for such an injunction.

The court issued the injunction pursuant to its "very broad" discretion under the UCL and the FAL. (*Benson v. Kwikset Corp.* (2007) 152 Cal.App.4th 1254, 1277 [62 Cal.Rptr.3d 284]; see Bus. & Prof. Code, §§ 17203, 17535.) The court acted well within this broad discretion in preliminarily enjoining

defendants from conducting any further business in California without first complying with the SAMP Act. The evidence, which we view in the light most favorable to the court's ruling (*People v. Mobile Magic Sales, Inc.* (1979) 96 Cal.App.3d 1, 8 [157 Cal.Rptr. 749]), belies defendants' claim that the injunction bars them from engaging in lawful conduct. History is contrary to defendants' assertion that they would refrain from making any representations regarding income if they were not subject to the injunction. This action arose out of defendants' failure to comply with a prior injunction that was intended to enjoin them from engaging in the same conduct. In any event, the injunction does not prevent defendants from conducting business in California. Rather, it merely conditions their continued activity on compliance with California's consumer protection laws.

■ We also reject defendants' contention that the injunction is mandatory and not prohibitory. To determine whether an injunction is mandatory or prohibitory, we "examine the terms and effect of the injunction in order to discover its character. [Citation.]" (*People v. Mobile Magic Sales, Inc., supra*, 96 Cal.App.3d at p. 13.) "The purpose of mandatory relief is to compel the performance of a substantive act or a change in the relative positions of the parties. [Citations.] By contrast, the prohibitive order seeks to restrain a party from a course of conduct or to halt a particular condition. [Citation.] The character of prohibitory injunctive relief, however, is not changed to mandatory in nature merely because it incidentally requires performance of an affirmative act. [Citation.]" (*Ibid.*)

The purpose of the injunction at issue here is to restrain defendants' continued violation of the SAMP Act. Any aspects of the injunctions that require defendants to engage in affirmative conduct are merely incidental to the injunction's objective to prohibit defendants from further violating California's consumer protection laws. Accordingly, the injunction is prohibitory in nature. (See, e.g., *People v. Mobile Magic Sales, Inc., supra*, 96 Cal.App.3d at p. 13 [preliminary injunction requiring defendants to remove mobilehomes displayed in violation of the Vehicle Code deemed prohibitory; "While the act of removal is an affirmative act, it is incidental to the injunction's prohibitive objective to restrain further violation of a valid statutory provision."]; see also *People v. Hill* (1977) 66 Cal.App.3d 320, 331 [136 Cal.Rptr. 30] [injunction compelling unlicensed accountant to cease using the term "accounting" in his business name was prohibitory because the injunction's purpose was to prevent the defendant from engaging in false advertising].)

Defendants' citations on this point are unavailing. In *Paramount Pictures Corp. v. Davis* (1964) 228 Cal.App.2d 827 [39 Cal.Rptr. 791], a movie studio sued Bette Davis for specific performance of a contract to act in a movie.

(*Id.*, at pp. 833–834.) The court concluded that an injunction prohibiting Davis from performing any work as an actress prior to completing her contract with Paramount, even for her current employer, was mandatory because it compelled her "to violate her contract with [her current employer] and to surrender a status and rights lawfully held by her at the time the injunction issued." (*Id.*, at p. 838.) In *Ambrose v. Alioto* (1944) 62 Cal.App.2d 680 [145 P.2d 32], another specific performance case, the defendant was ordered to deliver fish to the plaintiff and enjoined from performing her current contract to deliver fish to another company. The court concluded that the injunction was mandatory, reasoning as follows: "The result and effect of the decree is not only mandatory in character but compels the performance of a substantive act and also contemplates a change in the relative position or rights of the parties which existed at the time the decree was entered." (*Id.*, at p. 686, italics omitted.)

The preliminary injunction at issue here does not compel defendants to violate a contract, nor does it compel them to surrender any rights that were lawfully held when the injunction was issued. Rather, it simply compels them to abide by their agreement and to maintain the status quo that was established when they stipulated to the final judgment and permanent injunction in the prior action. (See *People v. Hill, supra*, 66 Cal.App.3d at p. 331 [defining status quo for purposes of determining whether injunction is mandatory or prohibitory as " ' "the last actual peaceable, uncontested status which preceded the pending controversy" ' "].) Because the mandatory aspects of the injunction are merely incidental to its purpose of prohibiting defendants from continuing to engage in illegal conduct, the injunction is prohibitory. Accordingly, the rule requiring that courts give greater scrutiny to mandatory injunctions is not implicated.

## CONCLUSION

In a prior action, defendants stipulated to a final judgment in which they agreed to comply with the SAMP Act. They will not now be heard to complain of a preliminary injunction which, in meaning and effect, is virtually identical to their earlier agreement.

Defendants assert that the SAMP Act's phrase "will earn, is likely to earn, or can earn" is vague. Their position brings to mind the response of Senator Sam Ervin, Jr., during the Watergate Hearings of 1973. When asked how he was sure of the meaning of certain words, Ervin replied, "Because I can understand the English language. It's my mother tongue."[3] We can do no better. We believe that "affirmed" has equal clarity.

---

[3] Corry, *TV: Special on Watergate Hearings*, N.Y. Times (July 27, 1983).

The order granting the preliminary injunction is affirmed. Plaintiffs are awarded costs on appeal.

Gilbert, P. J., and Coffee, J., concurred.