Filed 7/18/25  Rescore Hollywood v. Samules CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| RESCORE HOLLYWOOD, LLC, | B337351 |
| Plaintiff and Respondent, | Los Angeles County Super. Ct. No. 23STCV31389 |
| v. | |
| ERIC SAMULES et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Daniel S. Murphy, Judge.  Affirmed.

Eric Samules, in pro. per., for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

Defendants and tenants Eric and Sara Samules appealed from a judgment entered against them after a jury trial on plaintiff Rescore Hollywood, LLC's (Rescore) unlawful detainer action.[1]  Eric contends the trial court erred in overruling Tenants' demurrer and denying his motion for judgment on the pleadings. He argues Rescore's three-day notices to pay rent or quit were defective and require reversal of the judgment because they included an inflated rent demand and directed payment to an incorrect address.  Eric also contends the trial court erred by altering the special verdict form after the jury began deliberations, depriving Tenants of a fair trial.  We affirm.

## BACKGROUND

Tenants and Rescore entered into a form lease contract dated November 8, 2022 for the rental of a residential unit in a building located at 1331 N. Cahuenga Boulevard in Los Angeles. The initial lease term was from November 17, 2022 through December 16, 2023.  The contract provided the lease automatically would renew on a month-to-month basis unless either party gave the other a 30-day written notice of termination.  Tenants agreed to pay monthly rent of $2,425

---

[1]  We refer to Eric and Sara Samules collectively as "Tenants."  To avoid confusion, we refer to Tenants individually by their first names.  Although Tenants jointly filed the notice of appeal, only Eric filed an opening brief.  Sara also did not appear at trial.  On December 9, 2024, the clerk of this court sent Sara a notice under rule 8.220(a) of the California Rules of Court, advising her that she had not filed an opening brief and her appeal would be dismissed if she did not file the brief within 15 days or show good cause for relief from default.  Sara did not respond.  Accordingly, we dismiss the appeal as to Sara.

2

—by the third day of each month—through Rescore's online payment site, or by delivering a cashier's check to the onsite manager's office.[2]  The lease also provided for a one-time rent concession totaling $3,637.50 to be credited to Tenants' rent for the months of January and April 2023.

On December 12, 2023, Rescore's agent served two three-day notices to pay rent or quit on Tenants.  The first notice demanded they pay delinquent rent totaling $4,850:  $2,425 from February 1 to February 28, 2023, and $2,425 from March 1 to March 31, 2023.  The notice stated that, within three days of service of the notice (excluding judicial holidays, Saturdays, and Sundays), tenants must pay the delinquent rent, or deliver possession of the premises, to Rise.  The notice stated "[p]ayment must be delivered in a money order or cashier's check only" either:  by "mail to:  1331 N. Cahuenga Blvd. Attn. Leasing Office, Los Angeles, CA 90028"; or by "delivering in person to: Maydel Almaguer or McKynzie Avant or any available personnel at 1331 N. Cahuenga Blvd., Leasing Office, Los Angeles, CA 90012," Monday through Sunday between the hours of 9:00 a.m. and 6:00 p.m.  (Italics and underlining omitted.)  Maydel Almaguer, identified as the landlord's agent, could be reached by telephone at (323) 433-1331.[3]

---

[2]     The lease stated rent payments were to be made to Rescore's agent, The Rise Hollywood (Rise) at 1331 N. Cahuenga Blvd., Los Angeles, CA 90028.

[3]     A year earlier, on December 7, 2022, Rescore's attorney served a three-day notice demanding $2,425 in delinquent rent for the period from December 1, 2022 through December 31, 2022.  The notice stated Rescore elected to "declare the forfeiture of your Rental Agreement" if Tenants failed to pay the delinquent

3

The second notice demanded delinquent rent totaling $21,825, for the months of April through December 2023 at $2,425 past due for each month.[4]  The payment and delivery information was the same as that in the first notice.

On December 22, 2023, Rescore filed an unlawful detainer complaint against Tenants based on the two December 12, 2023 notices.  The complaint claimed past-due rent totaling $26,675.  The complaint attached the lease contract, the two three-day notices, and proofs of service.

Tenants demurred to the complaint on the ground the notices were defective because (1) the rent demanded was overstated, as Tenants were entitled to a concession on the rent due for April; and (2) there was no lease on which to base an unlawful detainer action, as Rescore earlier had declared a forfeiture of the lease in the defective December 2022 three-day notice.  The trial court overruled the demurrer.  The court found the demanded amount was assumed to be true, and the complaint sufficiently alleged the rent concession did not apply: the lease provided the rent concession was " 'conditioned upon [Tenants'] full and timely compliance with the Lease Contract,' " and the complaint alleged Tenants had failed to comply with the lease by failing to pay rent.

---

rent, or deliver possession of the premises, within three days after service of the notice.  Rescore filed an unlawful detainer action based on that notice.  A year later, on December 12, 2023, the trial court granted Eric's motion for judgment on the pleadings on the ground the notice was defective.

[4]     As with the first notice, the second notice stated the date span and delinquent rent due for that period, e.g., $2,425 due from April 1, 2023 to April 30, 2023.

4

The court also rejected Tenants' argument that Rescore's December 2022 three-day notice terminated the lease and thus prevented it from claiming rent under the lease.  The court noted Rescore's first unlawful detainer action failed because the three-day notice was defective.  Tenants also had not cited any authority "for the proposition that a lease is forfeited when a defendant tenant successfully defends a[n] [unlawful detainer] action."  The trial court explained that to find otherwise would mean "any tenant who successfully fends off a[n] [unlawful detainer] action would thereafter be absolved of paying rent under the lease."

Tenants filed separate answers, asserting several defenses.  As relevant here, each alleged the notices were defective because they demanded more rent than Tenants owed, and did not "identify a person, address, or telephone number . . . where the rent can be paid"; and a "landlord/tenant relationship does not exist between Plaintiff and Defendant."

Before trial began, Eric made an oral motion for judgment on the pleadings.  He filed a written brief in support of his oral motion, as well as a request for judicial notice.[5]  In his brief, Eric argued the three-day notices failed to comply strictly with Code of Civil Procedure[6] section 1161, subdivision 2 because they gave an invalid address for in-person payment.  He noted the notices purported to allow payment in person at "1331 N.

---

[5]     The court heard Eric's oral motion on the morning of March 19, 2024.  Eric did not file his written brief and request for judicial notice until that evening.

[6]     Unspecified statutory citations are to the Code of Civil Procedure.

5

Cahuenga Blvd., . . . Los Angeles, CA 90012," but that address did not exist—the zip code was incorrect. Eric asked the court to take judicial notice of the fact the address did not exist. Eric also argued the notice overstated the rent because Rescore was not "entitled to demand, on December 12, full rent for December." He contended that, because the lease term expired on December 16, 2023, "*rent* for the latter part of December—which was past the lease expiration—[could not] have come due yet . . . at the time the notice was issued."

The trial court denied Eric's oral motion.[7] The jury trial began the next day. On March 21, 2024, the trial resumed and the jury began deliberations. During deliberations, the jury submitted a written question about questions five and six on the special verdict form.

Question five asked, "Was the amount due stated in the notice no more than the amount that Eric Samules and Sara Samules actually owed? [¶] Yes__ No__ [¶] If yes, go to question 6. If you answered no, stop here, answer no further questions . . . ." Question six asked, "Did Eric Samules and Sara Samules pay, or attempt to pay, the amount stated in the notice within three days after service or receipt of the notice? [¶] Yes__ No__ [¶] If yes, go to question 7. If you answered no, stop here, answer no further questions . . . ." Question seven asked, "What is the amount of unpaid rent that Eric Samules and Sara Samules would owe to Rescore Hollywood, LLC? Include all amounts owed and unpaid through the date of expiration of the three-day notice."

---

[7] There is no reporter's transcript of the hearing on Eric's oral motion for judgment on the pleadings.

The jury asked, "Does [*sic*] answers to questions 5 & 6 include the answer calculated to amounts due in 2024.  (If we answer 5 as yes and 6 as no[,] do we stop or continue to answer question 7 & 8.)"  The court responded in writing:

> "1.   Question 5 & 6 only applies to rent due on or before 12-31-23.
>
> "2.   If you answer question 5 yes and question 6 <u>no</u>, answer question 7 & 8[.]
>
> [¶] If you answer question 6 <u>yes</u>, stop[.]
>
> [¶] There was a typo on question 6[.]"

The jury returned its special verdict about ten minutes later.  On the verdict form the jury checked "Yes" in response to question five and "No" in response to question six.  The instructions following the yes/no choice for question six was corrected by interlineation to read:  "If no [crossing out the typed word yes], go to question 7.  If you answered yes [crossing out the typed word no], stop here . . . ."  The jury awarded Rescore $26,675 in total unpaid rent in response to question seven, and damages in the amount of $6,547.23—representing the reasonable rental value of the property from January 1, 2024 through March 21, 2024—in response to question eight.  The court polled the jury.  "As to [q]uestions 1, 2, 4, 5, 6, 7, and 8, all 12 jurors state[d] th[at] was their verdict."  The court filed the "verdict read," the jury "instructions given," and the jury's question with the court's response.  The court entered judgment in favor of Rescore on March 22, 2024.  Tenants filed a notice of appeal on March 25, 2024.

## DISCUSSION

On appeal, Eric challenges the legal sufficiency of the December 12, 2023 three-day notices, and contends Tenants were

denied a fair trial by the changes made to the special verdict form after the jury began its deliberations.

**1.** ***Appellate principles***

It is a fundamental rule of appellate review that an appealed judgment or order is presumed correct, and error must be affirmatively shown. (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609.) As the appellant, Eric may not rest on the bare assertion of error but must present argument and legal authority on each point raised. (*Hernandez v. First Student, Inc.* (2019) 37 Cal.App.5th 270, 277.) We will not " 'search . . . the law books to test his claim.' " (*L.O. v. Kilrain* (2023) 96 Cal.App.5th 616, 619.)

Throughout his opening brief, Eric supports his legal arguments by citing apparently nonexistent cases. (E.g., *Barker v. Tanaka* (2002) 101 Cal.App.4th 165; *Orozco v. Pina* (1996) 51 Cal.App.4th 72; *Kelsey v. J.R. Properties* (1990) 68 Cal.App.4th 690; *Kaiser v. Chesson* (1992) 4 Cal.App.4th 1805; *Hunter v. Superior Court* (2002) 103 Cal.App.4th 902; *Orser v. C.I.R.* (2014) 227 Cal.App.4th 1059; *Canter v. Crilly* (1979) 96 Cal.App.3d 10; *People v. Moore* (2018) 6 Cal.5th 1.)[8] We are mindful Eric represents himself on appeal, as he did in the trial court. Nevertheless, he " 'is to be treated like any other party and is entitled to the same, but no greater consideration than other litigants and attorneys.' " (*First American Title Co. v. Mirzaian* (2003) 108 Cal.App.4th 956, 958, fn. 1.) Accordingly, "we may disregard conclusory arguments that are not supported by pertinent legal authority." (*WFG National Title Ins. Co. v. Wells*

---

[8]     None of these cases appeared in Westlaw searches of the cited reporters and page numbers and of the parties' names.

*Fargo Bank, N.A.* (2020) 51 Cal.App.5th 881, 894 (*WFG*); see also *Delta Stewardship Council Cases* (2020) 48 Cal.App.5th 1014, 1075 (*Delta Stewardship*) [points not supported with reasoned argument and citations to authority are treated as forfeited].)

**2.      *Legal sufficiency of the three-day notices***

Eric contends the trial court erred in overruling Tenants' demurrer and denying his motion for judgment on the pleadings. A motion for judgment on the pleadings and a demurrer are equivalent.  (See *People ex rel. Harris v. Pac Anchor Transportation, Inc.* (2014) 59 Cal.4th 772, 777 (*Harris*).)  They thus are " 'governed by the same de novo standard of review.' "  (*Ibid.*)  We deem true all properly pleaded, material facts, but not contentions, deductions, or conclusions of fact or law, and we may consider matters subject to judicial notice. (*Ibid.*)

The Unlawful Detainer Act (§§ 1159–1179a) "sets forth procedures 'for landlords and tenants to resolve disputes about who has the right to possess real property.' "  (*City of Alameda v. Sheehan* (2024) 105 Cal.App.5th 68, 75 (*Sheehan*), quoting *Stancil v. Superior Court* (2021) 11 Cal.5th 381, 394.)  "[T]he relevant statutes impose shorter procedural timelines than the ones governing other civil actions."  (*Stancil*, at p. 390.)  As a result, unlawful detainer proceedings "demand strict adherence to the statutes' procedural requirements."  (*Ibid.*)

Under section 1161, subdivision 2 (section 1161(2)), "a tenant is guilty of unlawful detainer when the tenant continues in possession of a rental property without the permission of the landlord after default in the payment of rent."  (*Sheehan, supra*, 105 Cal.App.5th at p. 75.)  In such circumstances, "service of a 'valid three-day [notice to] pay rent or quit . . . is a prerequisite

9

to an unlawful detainer action.' " (*Ibid.*)  Under Section 1161(2), the three-day notice must state in writing the amount of rent that is due and "the name, telephone number, and address of the person to whom the rent payment shall be made."[9]  "[I]f payment may be made personally," then the notice also must include "the usual days and hours that person will be available to receive the payment."  (§ 1161(2); *Sheehan*, at p. 76.)  "But if the provided address 'does not allow' for personal delivery, 'it shall be conclusively presumed' that the payment was received by the owner on the date posted."  (*Sheehan*, at p. 76, quoting § 1161(2).)  Due to the summary nature of an unlawful detainer action, "a three-day notice is valid only if the landlord strictly complies with the provisions of section 1161[(2)]."  (*Levitz Furniture Co. v. Wingtip Communications, Inc.* (2001) 86 Cal.App.4th 1035, 1038 (*Levitz*).)

"[A] lessor's action to recover possession of real property is not one for unlawful detainer where he does not comply with the statutory notice requirements."  (*Kwok v. Bergren* (1982) 130 Cal.App.3d 596, 599–600; see also *Cal-American Income Property Fund IV v. Ho* (1984) 161 Cal.App.3d 583, 585 [unless statutory requirements are "followed strictly, . . . a landlord's remedy is an ordinary suit for breach of contract"].)  Thus, "[a] judgment [for unlawful detainer] must be reversed when it is based on a three-day notice which lacks the information required by . . .

---

[9]     Alternatively, the notice must state "the number of an account in a financial institution into which the rental payment may be made" (and the name and address of the institution); or, "if an electronic funds transfer procedure has been previously established, that payment may be made pursuant to that procedure."  (§ 1161(2).)

section 1161[(2)]." (*Foster v. Williams* (2014) 229 Cal.App.4th Supp. 9, 14 (*Foster*).)  Whether a three-day notice was legally sufficient is a question of law.  (*Id.* at pp. 13–14.)

a.     *Payment delivery address*

As he did in his motion for judgment on the pleadings, Eric contends the three-day notices were defective because they failed to provide a valid address for in-person payment.  The notices gave the same address as listed in the lease—the office in the building where Tenants leased the unit—as the location to mail payment for the demanded rent:  "1331 N. Cahuenga Blvd. Attn. Leasing Office, Los Angeles, CA, 90028."  The notices also gave Tenants the option to deliver their payment in person.  The stated street address and city where in-person payment could be made were identical to the mailing address.  The notices also included the names of two individuals—"or any available personnel"—at that address who could accept payment and the days of the week and hours when payment could be made, as section 1161(2) requires.  Under the personal delivery option, however, the notices incorrectly stated the zip code was 90012, instead of 90028.

Eric asked the trial court to take judicial notice of the fact the address "1331 N. Cahuenga Blvd., Los Angeles, CA 90012" does not exist.  We may take judicial notice of this fact.  (Evid. Code, §§ 452, subd. (h), 453, 459; *Harris*, *supra*, 59 Cal.4th at p. 777.)  We agree that 1331 N. Cahuenga Blvd., Los Angeles is not located in the 90012 zip code.  This was an obvious typographical error, however, as the notices listed the identical street address—with the correct zip code—directly above the address for the in-person delivery option.  Moreover, the very unit Tenants leased was located at the same address, and the

11

lease itself stated they could make their monthly rent payment at the "on-site manager's office" in that same building. In any event, there was no error in the address listed for delivery of their payment by mail. The statute specifically anticipates a scenario where the provided address "does not allow for personal delivery." (§ 1161(2); *Sheehan, supra*, 105 Cal.App.5th at p. 76.) In that case, "it shall be conclusively presumed that upon the mailing of any rent . . . to the owner by the tenant to the name and address provided, the . . . rent is deemed received . . . on the date posted." (§ 1161(2).)

None of the cases Eric cites in his opening brief to support the notion that the typographical error in the zip code rendered the three-day notice legally insufficient appears to exist. We may treat the point as forfeited. (*WFG, supra*, 51 Cal.App.5th at p. 894; *Delta Stewardship, supra*, 48 Cal.App.5th at p. 1075.) In any event, the authorities Eric cited in the trial court also do not support his contention, as they are inapposite. For example, in *ESA Management, LLC v. Jacob* (2021) 63 Cal.App.5th Supp. 1, 3, 6, the appellate division of the superior court reversed a judgment in favor of a landlord where the 60-day notice did not include the amount of rent due. In *Foster*, the appellate division reversed a judgment in favor of a landlord where the three-day notice gave a web address—instead of a physical address— but did not state " 'that payment may be made pursuant to' 'an electronic funds transfer procedure [which] has been previously established,' " as required under section 1161(2). (*Foster, supra*, 229 Cal.App.4th Supp. at pp. 12, 17 ["While the statute may be satisfied without listing the URL address, it cannot be satisfied without stating that payment is to be made pursuant to the parties' previously established procedure for electronic

payment."].)  And in *Hsieh v. Penderson* (2018) 23 Cal.App.5th Supp. 1, 6, the appellate division found the landlord's notice was legally sufficient where it gave the name, address, and telephone number of the person to whom the stated rent should be paid, and the days and hours when that person was available to accept payment.  The inclusion of the weekday hours the individual was available to receive payment did not require payment to be delivered in person, as the notice did not preclude payment by mail.  (*Ibid.*)

The notices here complied with section 1161(2):  they stated the amount of rent due, and gave the name, address, and telephone number of the person(s) to whom rent could be paid.  Because Tenants had all the required information they needed to make the demanded payment, the notices were legally sufficient despite the typographical error in the zip code for the personal delivery *option*.

b.     *Amount of rent due*

Eric contends the three-day notices also overstated the rent.  A three-day notice "that seeks rent in excess of the amount due is invalid and will not support an unlawful detainer action." (*Levitz, supra*, 86 Cal.App.4th at p. 1038.)  Eric argues Rescore could not demand rent "owed beyond" the December 16, 2023 expiration date of the initial lease term.  We disagree.

The lease contract—made part of the complaint—stated that, unless Tenants (or Rescore) gave a 30-day written notice of termination, the lease *automatically renewed* after December 16, 2023, on a month-to-month basis.  Eric's contention that Rescore could not demand rent beyond December 16, 2023 because the lease had expired is belied by his concession that Tenants "did not provide such notice" and "the lease automatically

13

renewed after December 16, 2023." As no notice had been sent, the lease automatically would renew on December 17, 2023. Accordingly, because the lease required advance payment of the monthly rent by no later than the third day of the month, Tenants already owed unpaid rent to Rescore for the entire month of December 2023 by the time it served the December 12, 2023 notices.

Eric insists that, because the lease renewed on a month-to-month basis, Rescore had to issue a new three-day notice "reflecting the terms of the renewed month-to-month tenancy" in order to demand rent accruing after December 16, 2023. None of the valid authorities Eric cites supports this argument. (See *Green v. Superior Court of San Francisco* (1974) 10 Cal.3d 616, 619 [holding breach of implied warranty of habitability may be raised as a defense to unlawful detainer action]; *Vasquez v. Superior Court* (1971) 4 Cal.3d 800, 805 [case involving consumer class action lawsuit seeking recission of contracts based on fraudulent misrepresentation].)

Finally, Eric contends the three-day notice overstated the amount of rent owed for the month of April 2023 because it did not account for the rent concession required under the lease. He argues the rent demanded for April 2023 should have been $1,212.50, not $2,425. We agree with the trial court that, under the terms of the lease, Tenants no longer were entitled to a rent concession for April 2023 because they failed to comply with the lease contract when they didn't pay rent. The terms of the rent concession are included in an addendum to the lease. Under a section entitled "Concession/Discount Agreement," following the heading "Concession Cancellation," the agreement states: "The concession and discounts indicated above are conditioned

14

upon your full and timely compliance with the Lease Contract." The section continues, "If your lease is terminated early due to your default (for example, if you abandon the premises without paying rent or are evicted), this Concession/Discount Agreement will be immediately terminated, without further notice from us, and you will not be entitled to receive any further concessions or discounts."

Eric contends that, because Tenants prevailed in Rescore's first unlawful detainer action, they were not in default under the lease and "remained entitled to the rent concession for April 2023."[10]  Eric's point is not well taken.  Rescore's first unlawful detainer action failed because the December 2022 three-day notice was defective.  The court's dismissal of the case did not constitute a finding that Tenants had not breached the lease contract.  Moreover, the December 2022 rent demanded in the earlier defective notice is not at issue in this action.  We also do not read the second sentence under the "Concession Cancellation" section of the agreement as requiring early termination of the lease before Rescore could cancel the rent concession, as Tenants seemed to argue in their reply brief filed in support of their demurrer.  Rather, the sentence simply informs Tenants that, if the lease is terminated early due to their default, then the concession agreement also terminates.  Accordingly, because the lease expressly conditioned application

---

[10]     The only case the opening brief cites in this section that we could locate is irrelevant.  (Citing *Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.* (1992) 2 Cal.4th 342, 350–351 [lessor had right to terminate commercial lease, where it allowed termination on notice of lessee's intent to sublet premises, to receive benefit of increased rental value].)

15

of the rent concession on Tenants' "full and timely compliance with the Lease Contract," and the complaint alleged Tenants did not comply with the lease terms by failing to pay rent (as the jury ultimately found), Rescore was not required to apply the rent concession to the April 2023 rent.

Accordingly, the three-day notices did not overstate the rent Tenants owed.

### 3. *The special verdict form*

Eric separately contends the trial court committed prejudicial error "by altering the special verdict form after jury deliberations had already commenced." He argues the modification of the verdict form deprived Tenants of a fair trial. We review for abuse of discretion the trial court's decision " 'to instruct, or not to instruct, in its exercise of its supervision over a deliberating jury.' " (*People v. Fleming* (2018) 27 Cal.App.5th 754, 765.) We review de novo the legal accuracy of any instructions the court provided. (*Ibid.*) We also review de novo the correctness of a special verdict form. (*Saxena v. Goffney* (2008) 159 Cal.App.4th 316, 325.)

Nothing in the record demonstrates Eric objected to the court's response to the jury's question that led to the modification of the special verdict form. Accordingly, he has forfeited the issue on appeal. (See *People v. Johnson* (2015) 61 Cal.4th 734, 784 [defendant forfeited issue of whether technical error in verdict form improperly biased the penalty verdict " 'by failing to object to the form of the verdict when the court proposed to submit it or when the jury returned its finding' "]; *People v. Boyce* (2014) 59 Cal.4th 672, 699 [" 'When the trial court responds to a question from a deliberating jury with a generally correct and pertinent statement of the law, a party who believes the

16

court's response should be modified or clarified must make a contemporaneous request to that effect; failure to object to the trial court's wording or to request clarification results in forfeiture of the claim on appeal.' "].)

In any event, Eric has presented no evidence of error, much less prejudicial error. (See *In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 822–823 [to warrant reversal appellant must show error and that error resulted in a miscarriage of justice].) Courts are authorized to make "clerical corrections" to verdict forms, even after the jury has been discharged. (See *People v. Trotter* (1992) 7 Cal.App.4th 363, 369–370 [court did not err in correcting incorrect wording in verdict form that did not affect "the actual verdict rendered"].) During deliberations, the jury asked the court whether it should stop, or continue on to answer questions seven and eight, if the jury answered "no" to question six: "Did [Tenants] pay, or attempt to pay, the amount stated in the notice within three days after service or receipt of the notice?" The court told the jury that if the jury answered question six "<u>no</u>, answer questions 7 & 8," but if the jury answered question six "<u>yes</u>, stop." The court explained there was "a typo on question 6."

The verdict form's instructions following question six clearly were in error, telling the jury to "go to question 7" if the answer was "yes," but to stop if the answer was "no." As the court instructed the jury, for Rescore to establish its claim for unlawful detainer, it had to prove Tenants did not pay the amount stated in the notice within three days after its service. Accordingly, answering "no" to question six would mean Rescore had proved that element and the jury should continue on to question seven—the amount of rent Tenants owed—not that

17

the jury should stop.  Thus, the court's explanation to the jury was appropriate and correct.  (See *Mizel v. City of Santa Monica* (2001) 93 Cal.App.4th 1059, 1072 ["it is appropriate for trial courts to reinstruct the jury in an objective, neutral, and noncoercive manner if a jury's simple misunderstanding as to the verdict forms, or a clerical error, can be corrected"].)

Nor does the record demonstrate the court itself altered the special verdict form.  The form would have been in the jury room when the jury asked the court its question.  From what we can tell, the foreperson likely edited the form to correct the "typo" the court noted, as—according to its question—the jury already had answered "no" to question six.  But even if the court edited the form's instructions, as we discussed, it did not err in doing so.  (See *People v. Mitchell* (2001) 26 Cal.4th 181, 185 [" 'It is not open to question that a court has the inherent power to correct clerical errors in its records so as to make these records reflect the true facts.' "].)

Nor has Eric demonstrated he was prejudiced by the typographical error on the special verdict form or the correction of the error.  The error was in the form's instructions, not in the substance of the questions.  Eric nevertheless argues that by "changing the order of the answer choices, the court interfered with the jury's process, potentially altering its understanding of the case and its deliberative outcome."  To the extent Eric is referring to the court having first told the jury what it should do if it answered question six "no," we find no prejudice or possibility of the court having interfered in the jury's process.  The jury specifically asked the court, "If we answer 5 as yes and 6 as no[,] do we stop or continue to answer question 7 & 8."  The jury did not ask the court what it should do if it answered question six

18

"yes." The court directly answered the question posed, clarifying the mistake in the form's instructions. Moreover, the court polled the jury and all the jurors agreed the responses to each question in the special verdict form was their verdict.

In any event, the order of the answer choices to the question itself never changed. The first answer choice remained "Yes," and the second choice remained "No." The changes were made to the form's instructions as to what the jury should do depending on the answer to the question. Instead of "If yes, go to question 7," the instruction was changed to state, "If no, go to question 7."

Eric also seems to contend the trial court erred because its minute order did not "mention the consultation or the alteration of the verdict form itself." It is unclear what Eric means by "consultation." The record does not include a reporter's transcript of the proceedings. In any event, the jury's question and the court's response, as well as the edited special verdict form that the foreperson signed, are all part of the official court record, as the trial court filed them. Moreover, the minute order specifically stated the jury had a question and the court answered it. The minute order also reproduced the entirety of the special verdict form as read with the corrections made to the instructions following question six. We find no error.

19

## DISPOSITION

The judgment is affirmed.  As respondent did not appear, we award no costs.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


EGERTON, J.

We concur:


EDMON, P. J.


ADAMS, J.