Filed 3/18/15  Payan v. Cartwright Termite & Pest Control CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| FIROOZ PAYAN,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CARTWRIGHT TERMITE & PEST CONTROL, INC., et al.,<br><br>    Defendants and Appellants. | D064866<br><br><br><br>(Super. Ct. No. 37-2013-00049616-CU-OR-CTL) |

APPEAL from an order of the Superior Court of San Diego County, Joan M. Lewis, Judge.  Affirmed.

Nicholas & Tomasevic, Craig M. Nicholas, Alex M. Tomasevic, Tracy J. Jones; Law Offices of George Rikos and George D. Rikos for Defendants and Appellants.

H. Paul Kondrick for Plaintiff and Respondent.

This judicial foreclosure action arises out of a loan in the amount of $960,000 purchased by plaintiff Firooz Payan, and which was given to defendants Cartwright Termite and Pest Control, Inc. (Cartwright, Inc.) and Michael R. Cartwright II

(Cartwright) (together sometimes, defendants). The loan was secured by the defendant's business real property in El Cajon, California (the subject property).

After instituting this action, Payan sought a writ of attachment, appointment of a receiver, and a temporary protective order. The court declined to impose a writ of attachment or appoint a receiver, but did issue a protective order directing defendants to deposit the amount owed on the note into their attorney's trust account and stating that the amount to be deposited each month was $9,600. However, after depositing two of the $9,600 monthly payments, defendants stopped making the required payments and filed this appeal.

On appeal, defendants assert (1) the requirements for a writ of attachment were not met; and (2) the "strict requirements" governing mandatory injunctions were also not met. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Payan is in the business of lending and real estate investment. In 2012 he purchased rights to a two-thirds interest in a $960,000 promissory note from Esola Capital Investments, LLC (Esola) to Cartwright and Cartwright, Inc. The note was secured by a deed of trust on the subject property. The note and deed of trust were assigned by Esola to Payan. On November 16, 2012, the assignment of the deed of trust was recorded in the San Diego County Recorder's Office.

On May 21, 2013, Payan filed his complaint for judicial foreclosure against Cartwright, Cartwright, Inc. and CTPC, LLC (CTPC). The complaint alleged that in April 2007 defendants borrowed $960,000 from Overland Direct, Inc. (Overland). The

2

complaint further alleged that Overland signed an assignment of the deed of trust, granting a one-third ($320,000) interest in the note and deed of trust to Paul Galuppo. Galuppo thereafter assigned that one-third interest to CTPC. Overland thereafter assigned its two-thirds interest to Esola, and the assignment was recorded in the San Diego County Recorder's Office. Esola then assigned the note and deed of trust to Payan, and that assignment was also recorded. The complaint further alleged that the defendants were in default under the note by failing to make required payments.

Thereafter, Payan filed an ex parte application for a writ of attachment, appointment of a receiver, and temporary protective order (TPO). At that time Cartwright, Inc. and Cartwright owed approximately $312,000 in unpaid monthly payments on the promissory note, in addition to the $960,000 in principal owed under the promissory note. The trial court denied the ex parte application for writ of attachment. However, it granted a TPO that provided: "The [subject] property shall not be sold by Cartwright Termite & Pest Control Inc."

Payan thereafter filed a noticed motion for a right to attach order and TPO. The application/motion was heard by the trial court on August 16, 2013.

In the application for right to attach order and/or TPO, Payan asserted that he was seeking to secure a debt of $861,500. In that application, Payan, requested a protective order, directing that Cartwright, Inc. and Cartwright "[i]mmediately remit minimal monthly installments of $8,000 . . . ."

In opposition to the application, Cartwright and Cartwright, Inc. argued that (1) "Cartwright is an innocent victim of a behind-the-scenes business dispute between three

3

companies—Overland (the original deed of trust holder), Esola, and Aurora Fidelity (an Israeli company that held a bonded interest in Overland's properties, including Plaintiff's [*sic*] business premises)," and (2) "[t]he reason for the default is that Payan, Esola, and Tepper held no valid interest in the promissory note and deed of trust."

During oral argument on Payan's application, the trial court directed counsel to confer to agree to a reasonably accurate monthly payment owed under the terms of the promissory note. After conferring, the parties informed the court that the monthly installment amount due under the promissory note was $9,600, based on the "most accurate information available" to defendants' counsel, based upon a "Loan Extension Agreement" into which the parties entered. Based upon that representation by counsel the court ordered that (1) the TPO would "remain in effect until further court order;" (2) the "amount of money owed on the note be placed in defendant's counsel's trust account;" and (3) the "amount to be deposited each month is $9,600."

On November 20, 2013, defendants brought an ex parte application requesting that the court reconsider its August 16, 2013 order. At that hearing, defendants requested that the court "dissolve [the] mandatory injunction." The trial court denied the application.

Following that order, defendants deposited only the August and September 2013 monthly payments of $9,600 to their attorneys' client trust account.

Thereafter, Overland brought an ex parte application, seeking to intervene in the action, so that it could assert a fraud claim against Payan. The application was denied.

As noted, *ante*, Overland originally lent the $960,000 to Cartwright, Inc. and Cartwright. Defendants assert, however, that "Payan cannot prove lawful assignments

4

from Overland to Tepper/Esola and then to Mr. Payan. Payan cannot prove a lawful chain of title." Defendants further assert that "Overland itself, the original lender," contends that its assignment of the deed of trust and promissory note by its president, Doron Ezra, was secured by fraud.

However, that assertion is contrary to Ezra's deposition testimony. At his deposition, Ezra admitted that neither he, nor Overland, claimed any interest whatsoever in the $960,000 promissory note and deed of trust.

On January 8, 2014, defendants filed a motion to "dissolve" the minute order, referring to it as a "mandatory injunction." On January 31, 2014, the trial court denied the motion to dissolve the minute order. .

On or about April 4, 2014, Overland filed yet a third application to the trial court for leave to intervene, which the court denied "because Overland's proposed claims in intervention are the subject of an already pending action. *Overland Direct, Inc., etc., et al. v. Esola Capital Investment, LLC, etc., et al.,* SDSC Case No. 37-2013-00078078-CU-BT-CTL. Overland cited no authority that would permit intervention where the claim in intervention would be duplicative of an already filed lawsuit."

5

## DISCUSSION

## I. *APPLICABLE AUTHORITY*

Code of Civil Procedure section 486.010[1] provides: "(a) At the time of applying for a right to attach order . . . , the plaintiff may apply pursuant to this chapter for a temporary protective order by filing an application for the order with the court in which the action is brought. [¶] (b) The application shall state what relief is requested and shall be supported by an affidavit, which may be based on information and belief, showing that the plaintiff would suffer great or irreparable injury . . . if the temporary protective order were not issued."

Where a plaintiff seeks the ex parte issuance of a right-to-attach order, the court may, in its discretion, deny the ex parte issuance of the writ and instead set a hearing date, order service of notice, fix a briefing schedule, and issue a TPO, in which case the writ application is treated as one sought on regular notice. (§ 486.030.) Section 486.030, subdivision (a) provides, in this regard:

> "In any case where the plaintiff has applied for a right to attach order and writ of attachment . . . the court may in its discretion deny the application for the order and writ an issue instead a temporary protective order . . . if it determines . . . that the issuance of the temporary protective order instead of the right to attach order and writ would be in the interest of justice and equity to the parties, taking into account the effect on the defendant of issuing a writ of attachment . . . , the effect on plaintiff of issuing the temporary protective order instead of the writ, and other factors that bear on equity and justice under the circumstances of the particular case."

---

[1] All further undesignated statutory references are to the Code of Civil Procedure.

It must describe the protected property in a manner adequate to permit the defendant to identify the property. (§ 486.050, subd. (a).) The order may prohibit the transfer of any of the defendant's property in this state. (§ 486.050.)

When the TPO is issued, a lien is created on the property described in the order. The lien continues until the TPO expires. (§ 486.110, subd. (b).) The defendant may have the protective order modified or vacated on an ex parte application if the court determines that doing so would be in the interest of justice and equity to the parties. (§ 486.100.) The defendant may also seek by noticed motion an order terminating the TPO, and upon the defendant's filing an undertaking to pay plaintiff the amount of any judgment in a penal sum equal to the amount sought to be secured by the attachment, the court must terminate the TPO. (§ 489.320.)

## II. *ANALYSIS*

Here, rather than addressing the requirements for obtaining a TPO preserving the status quo, defendants address the law applicable to writs of attachment and mandatory injunctions. However, the trial court denied Payan's request for a writ of attachment and Payan never sought injunctive relief. By failing to address the law applicable to TPO's, defendants have waived the right to challenge the court's ruling on appeal. (*Niko v. Foreman* (2006) 144 Cal.App.4th 344, 368; *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956.)

Moreover, the record shows the trial court acted well within its discretion in ordering a TPO to protect the status quo. As discussed, *ante*, the court was permitted to take into account the interests of justice and equity to the parties, including its assessment

7

of the effect on defendants of the issuance of a writ of attachment, and instead issuing the more modest relief of a TPO. In this regard, the court acted well within its discretion in maintaining the status quo by requiring the defendants to deposit the monies owing under the loan into the attorney's client trust account, and ordering payments into that trust account of $9,600 per month.

Defendants assert that Payan's claim is not one upon which a TPO could be granted because the claim was secured by real property. This contention is unavailing.

Generally, an attachment may not be issued on a claim secured by real property. However, an exception applies where (1) the security has diminished in value to less than the amount owing on the claim, and (2) the plaintiff was not responsible for that diminution. (§ 483.010, subd. (b); *Bank of America v. Salinas Nissan, Inc.* (1989) 207 Cal.App.3d 260, 273.)

In support of his application for an attachment or TPO, Payan submitted a declaration from appraiser Jean V. G. Catling, who stated that the market value of the subject property that secured the promissory note had declined in value to $390,000, and therefore was inadequate to secure the promissory note. Thus, Payan submitted evidence adequate to support its application for a TPO, even though the loan was secured by real property.

Defendants assert that the issuance of the TPO was improper because Payan never demonstrated the probable validity of his claim and did not post a bond. As to the probable validity of Payan's claim, defendants assert that he could not demonstrate a valid chain of title. However, Payan demonstrated the valid assignments, which were

8

filed in the San Diego County Recorder's Office, from Overland to Esola, and from Esola to Payan. That created prima facie evidence and a rebuttable presumption as to the validity of the assignments. (Evid. Code, §§ 1450, 1451, 1532.) Moreover, an undertaking is only required for a writ of attachment, not a TPO designed to maintain the status quo. (Code Civ. Proc., § 489.210.)

Defendants assert that Payan failed to satisfy the strict requirements governing mandatory injunctions. However, the court ordered only a TPO to maintain the status quo, not a mandatory injunction.

Moreover, although a mandatory injunction is automatically stayed when an appeal is taken and a writ of supersedeas lies to prevent a trial court from enforcing such an injunction by way of contempt during the pendency of the appeal (*Smith v. Smith* (1941) 18 Cal.2d 462, 465-466), to the extent the TPO in this matter could be considered an injunction, it is not a mandatory in nature.

"[T]he general rule is that an injunction is prohibitory if it requires a person to refrain from a particular act and mandatory if it compels performance of an affirmative act that changes the position of the parties. [Citations.] The substance of the injunction, not the form, determines whether it is mandatory or prohibitory." (*Davenport v. Blue Cross of California* (1997) 52 Cal.App.4th 435, 446.) Further, "'[t]he character of prohibitory injunctive relief . . . is not changed to mandatory in nature merely because it incidentally requires performance of an affirmative act.'" (*People ex rel. Brown v. iMergent, Inc.* (2009) 170 Cal.App.4th 333, 342.)

9

Here, the TPO maintains the status quo by ordering the defendants not to transfer the subject property, to continue making payments by placing the money owing into their attorney's client trust account, and to continue paying that $9,600 per month as required by the loan. "An injunction that restrains the continuance of an act or series of acts may be just as much a preventive or prohibitory injunction as one that restrains the commission of an act." (*Jaynes v. Weickman* (1921) 51 Cal.App. 696, 699.)

Finally, defendants assert that because the court required payment of the entire $9,600 due under the note, as opposed to Payan's two third's interest, the court's order was a "forced interpleader," requiring money due to a nonparty, who defendants refer to as a Paul Gallupo, to also be set aside. However, defendants do not cite to the record to support its contention that Gallupo holds such an interest. In fact, Payan asserts, and the record shows, coappellant CTPC holds that interest. Accordingly, defendants cannot show that the court's order resulted in a "forced interpleader."

DISPOSITION

The order granting Payan's application for a TPO is affirmed. Payan shall recover his costs on appeal.

NARES, J.

WE CONCUR:

BENKE, Acting P. J.

McDONALD, J.

10