Filed 3/21/24  Capra v. Ledesma CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| GABRIEL CAPRA et al.,<br><br>     Plaintiffs and Respondents,<br><br>v.<br><br>JULIAN LEDESMA,<br><br>     Defendant and Appellant. | B313624<br><br>(Los Angeles County<br> Super. Ct. No. 21STCV03737) |

APPEAL from an order of the Superior Court of Los Angeles County, Mitchell L. Beckloff, Judge.  Affirmed.

Matevosyan Law Firm, Arman Matevosyan, for Defendant and Appellant.

Rosenberger + Kawabata, Elliot Rosenberger, B. Mako Kawabata, for Plaintiffs and Respondents.

Beginning in March 2019, plaintiffs and respondents Gabriel Capra and Kristin Wright lived on the second floor of a commercial building owned by defendant Royfield, Inc. Plaintiffs lived on the property pursuant to an Airbnb rental agreement requiring them to pay rent to defendant Christopher Kantrowitz, who held the property out as a commercial hostel. After Kantrowitz's lease ended in January 2021, Royfield leased the property to defendant and appellant Julian Ledesma.

While plaintiffs continued to reside at the property, Ledesma initiated construction and demolition activities on the premises. Plaintiffs filed a complaint asserting claims for various violations of the Los Angeles Rent Stabilization Ordinance (Rent Ordinance) and related habitability issues. Ledesma asserted his construction activities were to remediate code violations cited by the City of Los Angeles (City). Pending trial, the court granted plaintiffs' application for preliminary injunction and enjoined Ledesma from engaging in any activities not in conformity with the Los Angeles Municipal Code. The injunction also prohibited Ledesma from engaging in conduct impacting plaintiffs' rights of possession and enjoyment.

On appeal from the order granting the preliminary injunction, Ledesma contends the injunction is a "prohibited mandatory" injunction requiring him to engage in affirmative conduct. He also contends the injunction infringes on his and the City's legal rights when enforcing local zoning ordinances. We deem these contentions forfeited for the failure to raise them below and reject them on the merits. We affirm.

# FACTUAL BACKGROUND

In March 2019, plaintiffs began living in a dwelling unit on the second floor of a commercial building owned by Royfield. Plaintiffs rented the unit through an Airbnb listing posted by Kantrowitz, the prior commercial lessee, who held the property out as a commercial hostel known as the "Be Hive." A lease modification with Royfield allowed Kantrowitz to use the premises for "short term overnight stays by guests obtained through the 'Airbnb' system . . . to take advantage of health related classes and activities offered within the Premises." In exchange for $600 biweekly rent, plaintiffs occupied their own private bedroom with access to a shared kitchen and bathrooms.

In January 2021, Kantrowitz notified plaintiffs he intended to terminate their tenancies effective February 1, 2021. On the effective date of termination, Ledesma spoke with Wright and told her that he and his company would be leasing the property.[1] The following day (February 2, 2021), construction workers hired by Ledesma entered the common areas of the property and began knocking down walls, drilling holes, and sawing lumber. Plaintiffs posted a cease and desist letter in the hallway. The workers continued construction, posting their own signs in common areas indicating it was "private property." The dust, debris, and noise interfered with plaintiffs' use and enjoyment of the property and irritated Wright's lungs. Plaintiffs sought

---

[1] The evidence and trial briefs identify different companies owned by Ledesma (Sweatheory, LLC, Sweatheory Wellness, LLC, Sweatheory Group, LLC, and/or JPL Ventures, LLC).

alternative living accommodations but did not receive relocation assistance.[2]

## PROCEDURAL BACKGROUND

### A.     The Complaint and Temporary Restraining Order

Plaintiffs initiated the underlying action in January 2021 and filed the operative first amended complaint on February 8, 2021.  In relevant part, plaintiffs alleged Ledesma's ongoing construction activities interfered with their enjoyment of the property and restricted access to structural and plumbing systems.  Plaintiffs further alleged the construction activities exacerbated existing habitability violations (plumbing and heating issues and the existence of vermin and mold).

The complaint asserted causes of action for violations of the Rent Ordinance (Los Angeles Mun. Code, § 151.00 et seq.)[3] for accepting rent for property unregistered for residential use, tortious and contractual breach of the warranty of habitability, trespass, private nuisance, negligence, and violations of the Unfair Competition Law (UCL) (Bus. & Prof. Code, § 17200 et seq.).  Plaintiffs requested disgorgement of prior rent payments (approximately $30,500), punitive and treble damages, and an

---

[2]     During a conversation with Capra through the Airbnb application, Kantrowitz offered to "pro-rate [plaintiffs'] rent for Jan[uary] based on your move-out date.  Additionally, I will be providing . . . $1[,]000 in moving assistance if the premises are vacated before Feb[ruary] 1, 2021[,] and your rent is paid for the days you are in residence in January."  Plaintiffs did not vacate by February 1.

[3]     Subsequent unspecified references to statutes are to the Los Angeles Municipal Code.

order enjoining defendants' unauthorized entry and interference with plaintiffs' rights of enjoyment.

On February 8, 2021, plaintiffs filed an ex parte application for temporary restraining order (TRO) and order to show cause (OSC) why a preliminary injunction should not issue. Plaintiffs argued they would likely prevail on the merits because defendants failed to give them notice to vacate and failed to pay mandatory relocation assistance as required by Civil Code section 1946.1 and the Rent Ordinance. In addition, plaintiffs argued the construction caused them ongoing harm as opposed to defendants, who would suffer no harm.

In opposition, Ledesma argued the property was "safe" and the construction was "City permitted and occur[ed] only during regular hours." He argued plaintiffs did not establish a probability of success because they were "trespassers" who refused his offer to sublet the property. Ledesma averred a TRO would cause him irreparable injury by creating "endless liability and uncertainty."

On February 10, 2021, the court issued a TRO and OSC re preliminary injunction. The TRO restrained Ledesma, Kantrowitz, Royfield, and all persons acting on their behalf from engaging in construction requiring valid permitting or infringing upon plaintiffs' rights to quiet enjoyment of their units and common areas.

**B.  Ledesma's Motion for Reconsideration: The Notice of Code Violation from LADBS and Letter from HCIDLA**

By motion filed February 18, 2021, Ledesma requested the court reconsider the TRO in light of new facts. Ledesma asserted

the Los Angeles Department of Building and Safety (LADBS) issued a "Notice of Code Violation" covering the property. The notice informed Royfield it received a complaint alleging the property violated various municipal code sections. A physical inspection revealed the property was in violation for having (1) unapproved occupancy or use of the office building as a hostel/hotel; (2) substandard maintenance; (3) substandard heating; (4) deteriorated or defective flooring or supports; (5) inadequate fire protections; (6) hazardous electrical wiring; and (7) damaged plumbing sanitation fixtures. The notice advised Royfield its failure to comply by March 18, 2021, "may result in further action including assessment of a fee." Citing these violations, Ledesma requested modifying the TRO to permit "reasonable construction."

Plaintiffs opposed Ledesma's motion and reasserted their rights under the Rent Ordinance notwithstanding the notice to cease unapproved use. Plaintiffs attached a letter from the Rent Stabilization Division of the Los Angeles Housing and Community Investment Department (HCIDLA) informing Royfield the property "has been determined to be subject to [the Rent Ordinance] based upon the residential use of the property versus its legal use (commercial)." The HCIDLA advised Royfield there was "a specific procedure the [Rent Ordinance] requires a landlord to follow for evictions based on compliance with a

governmental order, such as the Notice of Code Violation that has been issued by the [LADBS]."

The court denied Ledesma's reconsideration motion.

## C.     The Preliminary Injunction

By written opposition, Ledesma argued a preliminary injunction would irreparably harm all parties involved in the litigation by pausing any remediation efforts addressing health and safety violations. Assuming the Rent Ordinance applied, Ledesma argued the City prohibited all no-fault evictions under the COVID-19 moratorium. He claimed the ban on evictions prevented him from complying with the Tenant Habitability Program (THP) (§ 152.00 et seq.), which requires landlords to temporarily relocate tenants "to alternative housing accommodations," if necessary, during construction.[4] (§ 152.01.) In addition, Ledesma argued section 731a of the Code of Civil Procedure prohibited injunctive relief for any reasonable and necessary business operation in a commercial zone.

In reply, plaintiffs argued Ledesma continued construction activities in violation of the TRO and failed to minimize dust, debris, and other effects impacting their rights of enjoyment. Plaintiffs contended Code of Civil Procedure section 731a was

---

[4]      The City adopted the THP "to facilitate landlord investment in Primary Renovation Work without subjecting tenants to either untenantable housing conditions during such renovation work or forced permanent displacement. The [THP] requires landlords to mitigate such temporary untenantable conditions, either through actions to ensure that tenants can safely remain in place during construction or through the temporary relocation of tenants to alternative housing accommodations." (§ 152.01.)

7

inapplicable because Ledesma's construction was both unreasonable and injurious under the statute.

Following a hearing on March 3, 2021, the court granted the application for a preliminary injunction. Finding plaintiffs continuously occupied the property "for quite a long period of time," the court found a substantial likelihood plaintiffs would prevail on a claim for quiet title under the Rent Ordinance. The court then found Ledesma did not comply with the THP because he failed to submit a tenant habitability plan covering primary renovation work. Balancing the relative harms, the court found in favor of plaintiffs and found Ledesma lacking in credibility.

The order granting plaintiffs' application for preliminary injunction enjoined Ledesma and all persons acting on his behalf (defined as the "Enjoined Parties") as follows:

"1. The Enjoined Parties shall not engage in any construction, remodeling, and/or demolition activities on the second floor of the property . . . unless such activities comply with the Los Angeles Municipal Code to the extent applicable[,] including the requirement for an approved Tenant Habitability Plan for Primary Renovation Work and Related Work pursuant to [section] 152.03 B.

"2. In no event shall construction, remodeling, demolition, or any other activities undertaken by any of the Enjoined Parties impact Plaintiffs' right to possession and/or use

8

of their bedrooms, common areas, or free ingress to and egress from the Premises."

Plaintiffs served Ledesma a file-endorsed copy of the signed order. Ledesma timely appealed.

## DISCUSSION

### A. Ledesma Forfeited His Appellate Contentions

On appeal, Ledesma contends the trial court erred by issuing a "prohibited mandatory" injunction requiring him to engage in affirmative conduct. He also contends the injunction infringes on his and the City's legal rights. These contentions were never brought before the trial court.

It is a fundamental principle of appellate procedure that a "party who fails to alert the trial court to an issue that has been left unresolved forfeits the right to raise that issue on appeal." (*Araiza v. Younkin* (2010) 188 Cal.App.4th 1120, 1127 (*Araiza*); see *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1138 ["It is clearly unproductive to deprive a trial court of the opportunity to correct such a purported defect by allowing a litigant to raise the claimed error for the first time on appeal"].)

Ledesma's appellate contentions are not based, as they were in the trial court, on plaintiffs' right of possession or the reasonableness of his construction activities. Apart from Ledesma's argument regarding section 731a of the Code of Civil Procedure, we deem all of Ledesma's appellate contentions forfeited. (*Araiza, supra*, 177 Cal.App.4th at p. 1127.) Despite this conclusion, we exercise our discretion to consider the contentions as presenting legal questions determinable from

9

uncontroverted facts.  (See *County of Kern v. T.C.E.F., Inc.* (2016) 246 Cal.App.4th 301, 326–327.)[5]

## B.     The Rent Ordinance and THP Indisputably Protect Plaintiffs

Before we address Ledesma's appellate contentions, we note what he has *not* argued on appeal.  Ledesma offered no argument in his opening brief challenging the trial court's application of the Rent Ordinance or THP to plaintiffs' rights of occupancy.  Application of these protections by the court is reasonable and unchallenged.  (See § 151.02 ["Rental Unit" defined in part as any housing accommodation in hotels or boarding houses occupied as a primary residence for any period more than 30 days]; *ibid.* ["Landlord" defined as any owner, lessor, sublessor, "or the agent, representative or successor of any of the foregoing"].)  There is no showing the Rent Ordinance protections were rendered inapplicable by the absence of any lease agreement between Ledesma and plaintiffs.  (See § 151.09(a)(5)–(6) [Rent Ordinance applies to unapproved holdover tenants].)  As such, it is undisputed the Rent Ordinance and THP apply to plaintiffs' use of the property and Ledesma's construction activities.

## C.     Ledesma's Contentions Are Unpersuasive

Nor has Ledesma challenged the findings on which the preliminary injunction issued: the likelihood of prevailing on the

---

[5]     We do not consider any arguments Ledesma raised for the first time in his reply brief.  "'Obvious reasons of fairness militate against consideration of an issue raised initially in the reply brief of an appellant.'" (*In re Marriage of Khera & Sameer* (2012) 206 Cal.App.4th 1467, 1477.)

merits and balancing of harms.  (*White v. Davis* (2003) 30 Cal.4th 528, 554.)  We decline to reconsider those findings.

Instead, Ledesma's principal contention is that the trial court issued a "prohibited mandatory" injunction requiring him to engage in affirmative conduct.  In addition, he asserts the injunction infringes upon his rights and those of the City when enforcing local zoning ordinances.  We review each of these legal contentions de novo.  (*People ex rel. Feuer v. FXS Management, Inc.* (2016) 2 Cal.App.5th 1154, 1159; see also *People ex rel. Herrera v. Stender* (2013) 212 Cal.App.4th 614, 629–630 [preliminary injunctions generally reviewed for abuse of discretion].)

1.      *The Preliminary Injunction Is Not Mandatory*

Ledesma's first contention questions the type of injunctive relief awarded.  He argues the injunction should be reversed because it requires Ledesma to affirmatively pay for plaintiffs' housing expenses and act as their "quasi-landlord and quasi-property manager."

To the extent Ledesma contends the trial court could never issue a preliminary injunction requiring affirmative conduct, he is mistaken.  Mandatory injunctions may be issued; they simply are rarer and subject to stricter appellate scrutiny.  (*Shoemaker v. County of Los Angeles* (1995) 37 Cal.App.4th 618, 625.)

We also reject the notion the injunction in this case is mandatory and not prohibitory.  "The designation given an injunction by the trial court does not determine whether the decree is prohibitive or mandatory.  Instead, the appellate court must examine the terms and effect of the injunction in order to discover its character."  (*People v. Mobile Magic Sales, Inc.* (1979)

11

96 Cal.App.3d 1, 13 (*Mobile Magic Sales*).) "'The purpose of mandatory relief is to compel the performance of a substantive act or a change in the relative positions of the parties. [Citations.] By contrast, the prohibitive order seeks to restrain a party from a course of conduct or to halt a particular condition. [Citation.] The character of prohibitory injunctive relief, however, is not changed to mandatory in nature merely because it incidentally requires performance of an affirmative act. [Citation.]' [Citation.]" (*People ex rel. Brown v. iMergent, Inc.* (2009) 170 Cal.App.4th 333, 342 (*iMergent*), quoting *Mobile Magic Sales*, *supra*, at p. 13.)

The injunction in this case restrains Ledesma's activities that violate the law and infringe on plaintiffs' use and enjoyment of the property. In fact, the injunction provided Ledesma two alternatives. He could either stop construction on the premises or proceed lawfully in compliance with the Rent Ordinance and THP. Given the choices afforded Ledesma, the injunction does not compel Ledesma to do anything.[6] At most, the provision requiring Ledesma to proceed in accordance with local law is "merely incidental to the injunction's objective to prohibit [Ledesma] from further violating" the law. (*iMergent*, *supra*, 170 Cal.App.4th at p. 342.)

Ledesma's discussion of the case law is unpersuasive. In *Davenport v. Blue Cross of California* (1997) 52 Cal.App.4th 435 (*Davenport*), an insurer denied the plaintiff's claim for what it deemed "investigational" treatment to prevent a recurrence of

---

[6] Ledesma provides no legal authority for the proposition he must pay for plaintiffs' rent or living expenses. Unapproved holdover tenants are generally liable for the reasonable value of use during any holdover period. (*11382 Beach Partnership v. Libaw* (1999) 70 Cal.App.4th 212, 218–219; Civ. Code, §§ 3334, 3335.)

cancer in the future.  (*Id.* at p. 441.)  The trial court enjoined the insurer from "'denying, refusing, excluding, limiting, or discontinuing coverage and benefits for performance'" of that medical treatment and the insurer appealed.  (*Id.* at pp. 439, 443.)  Though framed in prohibitory language, the injunction order was found to be mandatory in nature.  Rather than preserving the status quo (denying treatment to prevent recurrence in the future), the order required affirmative action (authorizing and paying for treatment) that changed the parties' relative positions.  (*Id.* at p. 447; accord, *Agricultural Labor Relations Board v. Superior Court* (1983) 149 Cal.App.3d 709, 712–713 [defendant enjoined from "'failing or refusing to immediately reinstate'" former employees].)

The injunction in this case does not do this.  By enjoining any activities infringing on plaintiffs' enjoyment of the premises, the injunction maintains the status quo of the parties pending trial.  (See *iMergent*, *supra*, 170 Cal.App.4th at p. 343 ["status quo" refers to the last actual peaceable, uncontested status preceding the pending controversy].)  As such, the injunction order is prohibitory in both purpose and effect.

Indeed, *Boy Kay Chan v. Gerdon Land Co.* (1951) 103 Cal.App.2d 724 (*Boy Kay Chan*), another case on which Ledesma relies, supports our conclusion.  As in this case, the landlord-defendant in *Boy Kay Chan* appealed from a preliminary injunction order prohibiting it "from in anywise interfering with the rights of the plaintiffs to use [a light well on the property] 'and from preventing egress or ingress from said light well area in and to the demised premises . . . .'"  (*Id.* at p. 726.)  The court held this provision of the injunction "is, of course, purely preventive and prohibitory."  (*Id.* at pp. 726–727; see *ibid.*

[finding second provision of injunction mandatory because it required defendant "to rip out parts of the property"].)  The injunction in this case contains a similar directive prohibiting Ledesma from engaging in any conduct infringing on plaintiffs' use and ingress/egress.  It too is "purely preventative and prohibitory."  (*Id.* at p. 726.)

     2.    *The Injunction Does Not Infringe Legal Rights*

Ledesma next contends the injunction violates his rights and those of the City when enforcing local zoning ordinances.  This contention appears to be based on two alternative arguments.

Ledesma first argues California Civil Code section 3423 and Code of Civil Procedure sections 526(b) and 731a call for the reversal in this case.  These statutes do not apply to this tenant dispute.

Together, section 3423 of the Civil Code and section 526, subdivision (b) of the Code of Civil Procedure prohibit injunctive relief which prevents a legislative act by a municipal corporation or the execution of a public statute by public or private officer.  (*Alfaro v. Terhune* (2002) 98 Cal.App.4th 492, 500 (*Alfaro*); *City of Los Angeles v. Superior Court* (1959) 51 Cal.2d 423, 430.)[7] Ledesma cites no authority, and we are aware of none, invoking these principles to prohibit injunctions against private individuals in his situation.  Nor does Ledesma explain how the injunction in this case interferes with the City's ability to enact

---

[7]    An injunction may not be granted to "prevent the exercise of a public or private office, in a lawful manner, by the person in possession," or to "prevent a legislative act by a municipal corporation."  (Civ. Code, § 3423, subds. (f), (g); accord, Code Civ. Proc., § 526, subds. (b)(4), (b)(6).)

14

or execute its laws.  The injunction permits Ledesma (and Royfield as landowner) to remediate the violations in a lawful manner.

Section 731a of the Code of Civil Procedure "denies injunctive relief to private persons whenever a commercial enterprise operates within a legally defined area under an express permit as long as the enterprise does not employ unnecessary and injurious methods of operation."  (*Christopher v. Jones* (1964) 231 Cal.App.2d 408, 411.)[8]  Assuming the construction activities in this case were in furtherance of Ledesma's business, those activities injured plaintiffs' legal rights under the Rent Ordinance and THP.  As the statutory language clarifies, section 731a does not apply to "unnecessary and injurious methods of operation."  Ledesma cannot rely on sections 3423, 526(b), or 731a to engage in unlawful conduct.  (See *Alfaro*, *supra*, 98 Cal.App.4th at p. 501; *Camp v. Board of Supervisors* (1981) 123 Cal.App.3d 334, 356–357; *Gelfand v. O'Haver* (1948) 33 Cal.2d 218, 221.)

Ledesma's second argument concerns his own use and enjoyment of the property.  Ledesma avers he cannot possibly resume construction in compliance with the injunction because he is not the landowner or plaintiffs' "landlord" and cannot submit a tenant habitability plan under the Rent Ordinance and THP.

---

[8]  Section 731a of the Code of Civil Procedure provides: "Whenever any city, . . . shall have established zones or districts under authority of law wherein certain manufacturing or commercial or airport uses are expressly permitted, . . . no person or persons, . . . shall be enjoined or restrained by the injunctive process from the reasonable and necessary operation . . . of any use expressly permitted therein, nor shall such use be deemed a nuisance without evidence of the employment of unnecessary and injurious methods of operation."

15

Assuming he could, Ledesma argues the latter portion of the injunction prohibiting construction "impact[ing] Plaintiffs' right to possession/and or use" of the property would still exclude him from the property.  As a result, Ledesma contends the injunction violates his rights to due process and insulates plaintiffs from being lawfully evicted from the property.

This argument is unpersuasive.  Ledesma is either a "landlord" under the Rent Ordinance as successor lessee and agent or representative of Royfield, or he is not.  If he is, he would be eligible to submit a tenant habitability plan to renovate the property.  (§§ 152.01, 152.03.)  If he is not, he identifies no authority permitting the type of interference with plaintiff's right of use and enjoyment presented in this case.  Whether plaintiffs' rights of occupancy interfere with Ledesma's own ability to occupy the property, plaintiffs' rights continue until they are lawfully extinguished.  (See §§ 151.09(A), 151.09(G); Civ. Code, § 1946.1.)

In sum, we discern no legal error in the language or operation of the preliminary injunction.  If changed circumstances call for it on remand, Ledesma may seek modification or dissolution of the injunction.  (Code Civ. Proc., § 533.)

**DISPOSITION**

The order granting plaintiffs' application for preliminary injunction order is affirmed. Plaintiffs shall recover their costs on appeal.

MORI, J.

We concur:

CURREY, P. J.

COLLINS, J.